Mr. Herndon, you have reserved three minutes for rebuttal. I have, Your Honor. Thank you. That gives you seven minutes out of the gate. Let me just get myself situated. All right. You may proceed. Thank you, Your Honor. May it please the Court, my name is Jackson Herndon and I represent the appellants in this case. There's been a lot of deception about what happened in the summer of 2018. But the allegations in this case are clear. Ethiopian Airlines agreed to sell airplanes and jet engines to Arena Riparian Cayman. This was a really good deal for Arena Riparian. It was able to turn that deal around. Well, I think we know the facts. I guess the issue really is you already had a bite of this apple in the state court and lost. And so I guess my question is, why isn't this just res judicata, plain and simple? And why isn't your remedy then to go back to Justice Ostrager and seek relief from the judgment there based on, as the CPLR allows, newly discovered evidence which would probably have produced a different result? Well, Your Honor, it's not a second bite of the apple at all. Well, just to answer my question, why isn't that the proper way to do this instead of doing an end run into federal court and trying to say that this is not res judicata or this is not collateral estoppel? And it seems to me that the CPLR provides the very remedy that you're seeking. Your Honor, in theory, there is a remedy under the CPLR to potentially move to replead and bring a new claim in the state court. Well, you just say newly discovered evidence, which is what you're arguing. That is the whole point of your brief, right? That's right, Your Honor. Newly discovered evidence in that very case. Absolutely. That would allow you to go back to Justice Ostrager and say, let's reopen this. Let's vacate that judgment. And the practicalities of what happened in the state court and what has happened over the course of that litigation are really important here. And as was raised below, when this case was in front of Judge Engelmeyer, we explained what happened. This case had been long It's really not the second bite at the apple. It's more like five bites at the apple. I mean, one of my questions is, in the state court system you had three complaints. It seems to me that the decisions of the state court were on the merits. Why weren't they on the merits? I mean, you had multiple opportunities to plead. There was much you know, it's the state court system where you have these one sentence decisions, but if you look at the transcript of the argument, it's apparent that the merits were the basis for the decision. That is the limit of liability clause, etc. Well, the dismissals of Ethiopian Airlines from the case were never said to be on the merits so they presumptively are not on the merits. And the dismissals happened very early in that case. Ethiopian escaped liability in the state court case because Justice Ostrager said expressly Ethiopian is protected by the limitation of liability. That sounds to me like a merits-based decision. It's not the failure to plead. It is they're protected by this provision. Why isn't that a merits decision? Especially because of the infancy of that case. Because the court looked quickly at these allegations I'm sorry. The response from Ethiopian Airlines was this is a breach, but it's a plain vanilla breach. And there really wasn't any question about that. And so the court said, look, I have a limitation of liability provision here. I'm enforcing that. Again, at the infancy of that case. If you jump forward now, and this goes back to Judge Sullivan's question That's the only reason it was not on the merits is that it was early? I mean, could you have repled it so that it was to get around? I know Judge Engelmeyer goes into possibilities on why there might be an exception to the limitations clause, but it seems to me that in these circumstances it was a decision based on that they did not have a right because of the limitations clause. And that sounds to me like a merits decision. It's really not under the CPLR though, Your Honor. Because the judge did not say this is on the merits, it's therefore presumptively not. And I think the infancy is the most important factor there. And to jump forward in time in the state court proceedings. Do judges typically say that this decision is on the merits? I'm sorry? I was just wondering whether judges in the state court system usually say that explicitly, this decision is on the merits. Yes, and they can write that absolutely. In this case that wasn't. You're saying the absence of that means it's not on the merits? It means it's presumptively not on the merits, Judge. And there's nothing in this case to indicate that it was anything other than a decision, the infancy of a lawsuit to decide who are the right plaintiffs. What about the substance of the discussion, the colloquy and the oral argument? What about the reasoning? Why don't they overcome the presumption? This resulted in a summary written order. There was a box that said this was a non-final judgment. I mean, the box that it's a non-final judgment just means that there's other parties that are still continuing. And I think the law is pretty clear for race judicata purposes. If there's a judgment as to the particular parties and claims, but there are others that are continuing on in the litigation, that doesn't mean it's a non-final order. Your Honor, I think the box is instructive here. And again, this all goes to the infancy of when that case in state court was dismissed. It was done very early. It was prematurely dismissed? No, not at all, Judge. I think that the facts at that point in the case were so different than what we have today. And that's everything about this appeal. This case is tremendous. Well, this is what the order says. The clerk is directed to sever and dismiss defendant Ethiopian Airlines Group from the action. You're saying that's not a final disposition with respect to Ethiopian Airlines? It's a final disposition as to Ethiopian Airlines. It is not a decision on the merits. Well, no, I thought just a minute ago you said it was not a final order. What matters is this talismanic phrase, though, Your Honor. Is this on the merits? And if it's not on the merits, and there are many cases, this was litigated at length below. And by the way, Judge it's a dismissal on the merits. But it's a dismissal for failure to state a cause of action, right? That's right. That's a dismissal under 3211A7. That's right, Your Honor. It seems to me there's an ample case law that says a dismissal under 3211A7 is a judgment on the merits. I can read from my brief and maybe rebuttal is a smarter time to do this, Judge, but the majority of cases actually say the opposite. They say that if a case is dismissed at the infancy of its action and it's done under 3211, this is not presumptively a dismissal on the merits. There's nothing in this decision that suggested it was. And what's important here also, and this gets back to your first question, Judge Sullivan, is Justice Osteringer made it abundantly clear there would be no more motions. There would be no more pleadings, no more amendments, and this case had to be trial ready by the end of the year. Four days, three days before we were ordered to be trial ready is when we found out these new allegations. All right. But again, the CPLR has a mechanism for you doing that. It would be like in federal court. If you had a federal judgment against you, and then you discovered new evidence that called into question that judgment, you wouldn't get to bring a new action someplace else and say, well, we have new evidence. You'd have to, I mean, to relieve the res judicata effect, you'd have to go back to federal court, to the court that issued the judgment, and say, hey, under Rule 59 or Rule 60, we need relief from the old judgment, and here's why. And there's a mechanism for doing that. You have the same mechanism in the state, don't you? Not quite. And certainly not in this case, for two reasons. Why do you say not in this case? I mean, it seems there's a provision of the CPLR that lets you do this. And there was a Supreme Court judge who said, I will hear no more motions. If any motions are filed, there will be sanctions. But the point is, it seems to me, for res judicata purposes, what you have to look at is the existence of a judgment. And if there is a judgment, then you've got to either vacate that judgment or live with it. But you don't get to try over in a new court and say, well, we've got new facts. But res judicata turns entirely on this question of on the merits. And when you've got a dismissal here at the infancy, the case law, and I'll bring it back. So that's your principal argument then, that this was not on the merits? That's right. And this was not questioned by Judge Engelmeyer either. The question really for him was, what about collateral estoppel? And that's what he improperly applied. Because he said, I think there was a fair and full opportunity to litigate these claims in the prior complaints. And those prior complaints lacked everything that brings life to the new allegations in this case. The allegations that Benedict Searman, this faithless fiduciary of Irina Riparian, went on the ground and paid tens of thousands of dollars of cash. These are entirely new allegations. And they deserve to be given a shot in this court. And Judge Engelmeyer, in fact, dealt with the merits of this case. Judge Engelmeyer? Yes. Did he? Yes, Judge Engelmeyer engaged with the factual allegations in this complaint and erred by misapplying Rule 12 and instead engaging in fact-finding. I know you think he erred, but he treated it as a case in which he could look at the merits. He treated it as a case where he was, where he was, I want to be careful how I say this, but where he engaged in the facts and made credibility decisions, Your Honor. And that's not appropriate. Your argument is he made credibility decisions that he shouldn't have made. But, I mean, any decision based on collateral estoppel is going to be deemed a decision on the merits, right? Or no? No. For the federal action? No, for the federal action, this is a Rule 12 case. The complaint is entitled to just all the same assumptions of truth, to factual allegations, and most importantly, Your Honor, to all of the inferences, all the reasonable inferences that you would draw in the plaintiff's favor. And Judge Engelmeyer refused to do that. Instead, he looked at the, he looked at the allegations, he looked carefully at the... Well, to engage in collateral estoppel, you kind of have to look at the prior action, right? Undoubtedly. Absolutely. But what the trial court erred in doing in this case was he said there's nothing new in these allegations. Your Honor, there's everything new about this case. Because the prior complaints never said anything. But that's not fact-finding, right? I mean, that's his conclusion that this under collateral estoppel is not a material change that would justify the relaxing issue conclusion, right? That's right. There were a couple errors here. One is that the facts were not credited as true, and the inferences were not drawn in the plaintiff's favor. But the district court also fact-found, and that's unmistakable. He said, I'm engaging in a fact-finding exercise here. And he looked at certain things in the deposition transcript that was attached to the complaint, Your Honors. And he spread the most rosy, innocent explanations into these illicit cash payments. That's fact-finding. I mean, he's saying that this is part of the pleadings, and he's allowed to then look through the pleadings to make a determination as to whether this is material. Yes, but what the court can't do is make a decision between rivalring plausible explanations. And that's exactly what he did. In fact, he said I think the far more plausible explanation is the innocent one. But that's not the motion to dismiss. The question is, is there a plausible explanation that goes in the favor of the plaintiff? And here there was. All right. Well, we've gone over, but you've reserved three minutes for rebuttal. So let's hear from Mr. Scherr. Good morning, and may it please the Court. Jeremy Scherr for Ethiopian Airlines Group. I agree with Judge Chin that this is a fifth bite at the apple, and I agree with Judge Sullivan that the core question here is, why does this case belong in federal court? I mean, I guess my question was more specific. Why isn't this race judicata based on the state judgment? And it absolutely is, Your Honor, because this is a textbook case of race judicata. Okay, so that requires then a decision on the merits. That's final, right? Among other things. It requires in fact, Your Honor, it doesn't even require a decision on the merits. It's even easier than that. Because the cases we cited show that if you get a dismissal in state court and then bring the same claim in federal court, the federal court needs to analyze the federal complaint and ask, is there anything in here that would have changed the outcome in the state court? Well, that seems to me the collateral estoppel analysis. For race judicata, what you have to figure out is, is this claim the same as claims previously brought, or could have been brought in a prior proceeding where there was a judgment that arises out of the same transaction? It seems to me you meet all three of those easy. And so the only question is whether or not this is a merits judgment and a final judgment. So could you speak to those? Do you agree with Mr. Herndon that this is not a merits decision under 3211A7? My position, Your Honor, is that it doesn't matter to the race judicata analysis. What if it doesn't matter? Do you agree that it was on the merits or not? I agree that it was on the merits, Your Honor. Tell us why you think it was on the merits. Because of how Your Honor articulated it. Because there was a finding that despite these extensive What about the argument that this was in the infancy of the case, it was early on? Your Honor, counsel's having it both ways by saying these decisions, these two decisions on two separate motions, months apart, were in the infancy of the case and yet it was too late to replead, move to re-argue or appeal. It can't be both. So since counsel is saying, oh, we have no opportunity to do anything in the state court action. We couldn't appeal. We couldn't move. We had to bring a brand new action in federal court alleging the same thing. Then obviously the case is decided on the merits because, again, counsel has admitted it was a final determination. We couldn't do anything about it. What does it mean? Is there a law in the state system on what it means to be on the merits for these purposes? Your Honor, I would say that the law in the state court system loosely equates finality with on the merits. For example, if a claim is time barred and is dismissed on that ground, it's a dismissal on the merits regardless of the adequacy of the claim itself. So these were claims that Arena, the predecessor to Spoleto, itself found to be finally dismissed. Your colleague on the other side says there are lots of cases under 3211A7 that says that kind of a dismissal is not on the merits. That may be true in certain circumstances, but again, based on Spoleto's own statements today, that it had no recourse but to come to a federal court to plead the case because it was locked out of state court means it was a decision on the merits. Spoleto's whole argument is that it had to come to federal court because it couldn't go back to state court and do all the things that litigants typically do when they lose in state court, such as appeal. So it can't be anything other than final and on the merits, according to Spoleto. So you're arguing that they thought it was final, that Spoleto thought it was final, or they wouldn't have been in federal court? Yes, Spoleto has made its bed, essentially. And if Spoleto believed that this was not a final determination, then it would have proceeded in state court. In fact, nothing stopped it from doing both. It could have appealed, right? Excuse me, Your Honor? They could have appealed? Absolutely, they could have appealed. They could have gone to the first department, like litigants typically do when they lose a motion to dismiss and they believe the judge got it wrong. That happens all the time in the state system. Of course. One of the differences between that system and this one? They're polar opposites, Your Honor, because the state court takes interlocutory appeals. So they could have done that. And there's a subtext in Spoleto's argument, including what counsel said today, that the court in the state action got it wrong. But that's not part of the res judicata or collateral estoppel analysis. That analysis doesn't look to the rightness or wrongness of the decision. It looks to all the issues that Your Honor just pointed out. Is it the same issue? And was there a full and fair opportunity to litigate? Right? I think that's only with collateral estoppel. I think full and fair opportunity to litigate is not really an inquiry for res judicata. Just simply whether there's a judgment and whether it's the same or involves claims that could have been brought in the prior action. Of course, Your Honor. And the one claim that was dismissed here on res judicata grounds, fraud, clearly could have been brought in the prior action. I'll briefly address the new allegations change everything. I am a little troubled by the more plausible, less plausible. That usually is not something that's done on a 12b6 motion. Yes, I'm happy to address that, Your Honor. What changes the calculus here is Spoleto's attaching the deposition transcript to the complaint. That changes everything because this court has made it clear that when a plaintiff gratuitously decides to attach documentary material to a complaint, then it's bound by whatever is in those documents. So here you have a deposition transcript. What if the documents both submitted by the plaintiff, the complaint, the deposition excerpt, suppose they arguably conflict? Can the trial court then decide which one is more plausible or should that conflict nonetheless be resolved in favor of the plaintiff? Your Honor, the court cannot choose between equally plausible explanations. So which one prevails? The document prevails, as this court held in ambidextrating, if it contradicts the pleading. And in this case, I want to make it clear, there is an unambiguous contradiction. This is not a case where a deposition transcript provides two conflicting plausible explanations for something. You often see where there's an affidavit that conflicts with a deposition testimony and one side submits that. You see that very often. This is a little bit different. Yes, Your Honor. And you usually see that on summary documents. Yes, Your Honor, because it's unusual for a party to gratuitously attach a document to the complaint and then contradict that document. That doesn't help them. Of course, Your Honor. Your Honor is exactly right. You said a moment ago the court cannot choose between equally plausible allegations. What if one is more plausible, less plausible? Can a court choose between them on a 12 v. 6? Your Honor, I honestly do not know the answer to that question. Well, the court has to draw all inferences in favor of the plaintiffs, right? Yes. So if there are multiple inferences to be drawn, any reasonable inferences that can be drawn in the plaintiff's favor have to go that way, right? Yes, that is correct, Your Honor. So I will revise my answer. I do know the answer. It is no, the court cannot choose between different levels of plausibility. It either meets the plausibility standard or it doesn't. Did the district court do that here? No, Your Honor, because of the significance of the transcript. Because in the transcript Sirimon testifies, I paid EAG's employees for maintenance and travel. He does not say I bribed them. He does not say... But one wouldn't ordinarily say I bribed them. Exactly, Your Honor, which is why it's such a curious decision to attach the deposition testimony. So what Spoleto is essentially arguing is, yes, Sirimon testified to one thing under oath. He said, I paid these workers so that they would perform maintenance work on an airplane. But according to Spoleto, he really meant to say something else. He really meant to say, I paid those workers to bribe them. And once... So respectfully, this is not a case about weighing different plausible explanations for something. This is not a case about saying, I credit this one plausible allegation over another plausible allegation. That's not happening here. This is a case about documentary evidence attached to the complaint refuting the complaint's allegations. It's just like the Amedex trading case that we cited, where this court affirmed dismissal because the plaintiff claimed that the defendant had willfully given confidential information over to the government without a subpoena and an attached document stating that there was a subpoena. But if we continue to draw inferences in favor of the plaintiff for the non-movement, can't we accept the description of paying for maintenance workers instead as a way to shield bribery? Your Honor, not when the plaintiff attaches a document that provides a completely innocent explanation and doesn't say anything about bribes and doesn't even raise... My point is that a person wouldn't say I bribed those workers. I made up a story about paying them for maintenance is what anyone, what any briber would actually say. I would expect Your Honor is correct which is why a plaintiff seeking to allege bribery should not attach a document to the complaint that says here's why I paid these workers and it was innocent. In other words, he attached it and wants us to disbelieve it. I couldn't say it better myself, Your Honor. Excuse me. And I assume my time is up if the court has more questions. Otherwise, thank you. Thank you very much, Mr. Sherr. We'll now hear from Mr. Herndon for three minutes. Thank you, Your Honor. Your Honor, I want to address this point about the alleged contradiction. A contradiction would have been this. When my colleague questioned Mr. Sierman about these text messages where he was offering to send tens of thousands of dollars, he would have said those weren't my text messages and I didn't send money. I don't think he's disputing that he sent money to folks at Ethiopian Airlines Group. I think the question is whether this was an admission of a bribe. You and the complaint, your client and the client, and then you attach the deposition as evidence of that. But all it is evidence of is payment, right? Not every payment is a bribe. Would you agree with that? Not every payment is a bribe. But there is a more than plausible... He also says the payment is for the military assets. And so that certainly cuts against the argument that he was paying, whether you want to call them bribes or anything, with respect to the civil assets. The distinction between those assets isn't as clear as Judge Engelmeyer saw it. And I understand the confusion because this case has a web of lies and there's a reason why it's confusing. Because Ethiopian Airlines made it that way. I don't know that it is confusing. But you're trying to draw the inference from the guy's testimony that he paid monies for military assets for services and then you are making the leap from that that those are bribes with respect to the civil assets. Is that a plausible conclusion? It is because of the context that is pled in the amended complaint. This all happened over the same several month period, the summer of 2018. The cash happened completely secretly. It was concealed for two and a half years. And it happened while Searman was stealing the military aircraft, which was originally part of this larger package deal. And it happened as he was laying the foundation to steal everything else that followed. But steal? There's no question, even from the original complaint, that he according to the complaint, was self-dealing against the interest of an entity to whom he owed a fiduciary duty, right? That's right. So it's not clear to me why the fact that he paid money as part of that and the details of those payments really changes your basic allegation, which is that he was self-dealing. Right. And those are the allegations against Ben Searman. Absolutely, Your Honor. But the case here is against Ethiopian Airlines. And the question is, did they breach this? The question is not whether they breached the contract. It's, did they do it in an egregious way? Well, I mean, I think the question I was really focused on was fiduciary duty. I mean, did they aid and abet Searman's breach of fiduciary duty? And that requires them to have substantially assisted. So I'm not sure why the fact of payments makes that more or less impressive. Well, when that claim was dismissed, the aiding and abetting breach of fiduciary duty claim, it was dismissed as being conclusory. There's no way that claim is conclusory today because we know exactly what the story was. Benedict Searman is on the ground, or rather sending his man on the ground, with tens of thousands of dollars in cash. This money was to grease the wheels of this transaction and enable his self-dealing. And Ethiopian Airlines, make no mistake, enabled the self-dealing. There was no way this was possible without their knowing complicity. And there's one line that I don't think we emphasized in the briefing. I just wanted to raise your Honor's attention. It's in our amended complaints at page 825 of the record. And this comes, this is an email we're quoting from in July of 2018. So this is after Searman has stolen the military airplane, after Irene Riparian has told Ethiopian Airlines, this man is an imposter, don't deal with him. And Ben Searman emails Ethiopian Airlines and he says, CSDS, that's his company, has already performed as agreed with Ethiopian on the first part of the deal, that's the military aircraft, and we fully intend to complete the second part in very short order. At the deposition that we attach to the complaint, he testifies repeatedly, this money is for the deal. I just want to close the deal. There's a more than plausible explanation inference, an allegation in this complaint, that this money was bribe money. But why did you think the deposition would help you? Why did you think that? Because he said so much more than was ever known. We have these text messages we discover shortly before his deposition where he's offering to send the money. He could have contradicted that. Those aren't my messages. I never sent money. But he doubled down. I didn't send $10,000, as said in the text message. I sent $50,000. I paid over a dozen employees on the ground. My deputy was given special access to these government buildings. And I did this because they're government employees. His text messages couldn't have been clearer. I know how things work in government run organizations. There was not a full and fair opportunity to litigate these claims as they were alleged in the prior state court action. And returning very briefly, Judge, I see my time has expired, but to your question about res judicata, and I didn't see myself coming here to quote favorably from the district court's opinion so much today, but if you look at the special appendix page 12, we'd submit that Judge Engelmeyer got res judicata correct. Presumptively, if it's not on the merits, if those talismanic words are not used, then res judicata doesn't kick in and it wouldn't preclude a state court claim and it wouldn't preclude this claim here in federal court either. Thank you. Thank you very much. Thank you both.